UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.H.F.,

                          Petitioner,

        -against-

PAUL ARTETA, in his official capacity as
Sheriff of Orange County, New York and
Warden of the Orange County Correctional
Facility; KENNETH GENALO, in his official
capacity as Field Office Director of New York,
Immigration and Customs Enforcement, TODD
LYONS, in his official capacity as Acting
Director U.S. Immigrations and Customs
Enforcement; MARKWAYNE MULLIN in his
official capacity as Secretary of Homeland
Security; and TODD BLANCHE, in his official
capacity as Acting Attorney General,

                         Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/14/2026

26 Civ. 4076 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, J.H.F., a Peruvian citizen, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). *See generally* Pet. (the "Petition"), ECF No. 1. J.H.F. contends that his Fifth Amendment right to due process was violated when, on April 8, 2026, he was arrested outside of his apartment building in White Plains, New York, and detained at Orange County Jail in Goshen, New York. *See id.* ¶¶ 3, 23–25, 72–81.[1] J.H.F. seeks immediate release from custody or, in the alternative, a bond hearing. *Id.* ¶¶ 6, 66. For the reasons stated below, the Petition is granted, and the Court orders J.H.F.'s immediate release.

---

[1] J.H.F. also claims that his detention violates the Fourth Amendment, the Administrative Procedure Act, and certain provisions and implementing regulations of the Immigration and Nationality Act, which require an arrest pursuant to a valid Form I-200 Warrant. *See* Pet. ¶¶ 82–98. Because the Court decides the Petition on other grounds, it does not evaluate the merits of these arguments.

## BACKGROUND[2]

J.H.F. is a 34-year-old Peruvian man who is the father of a 3-year-old son and the caretaker of his elderly mother.  Pet. ¶¶ 1, 5, 22.  After fleeing death threats in Peru, on May 15, 2022, J.H.F. entered the United States near Hidalgo, Texas.  *Id.* ¶ 22; Alonzo Decl. ¶ 3, ECF No. 9.  There, he was encountered by United States Customs and Border Protection ("CBP") officers who apprehended him and confirmed after an interview that he did not have valid documentation to enter the United States.  Alonzo Decl. ¶¶ 3–4.  On May 17, 2022, a CBP officer served him with an Expedited Removal Order ("Form I-860"), which charged J.H.F. as inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id.* ¶ 5; Form I-860 at 1, ECF No. 10-2. During processing, after J.H.F. expressed a fear of return to Peru, CBP officers transferred him to Adams County Correctional Center in Oakdale, Louisiana, where he received a "credible fear interview."  Pet. ¶¶ 6–7.  After the interview, a CBP officer determined that J.H.F. had established credible fear of persecution or torture if deported, which caused his case to be referred to an immigration judge for evaluation of his asylum application.  *Id.* ¶ 7.

On June 30, 2022, J.H.F. was served with a Notice to Appear (" June 2022 NTA"), which charged him as inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), as a noncitizen who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document, as well as 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than designated by the Attorney General.  *Id.* ¶ 8; June 2022 NTA at 1, ECF No. 10-3.  The NTA states that it was

---

[2] Having reviewed the Petition and the government's opposition and accompanying exhibits, the Court finds that the Petition "present[s] only issues of law," and may, therefore, be adjudicated without a hearing.  28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously "as law and justice require").

issued after a CBP officer found that J.H.F. had demonstrated a credible fear of persecution or torture if deported, June 2022 NTA at 1, but it was not filed with the Executive Office of Immigration Review ("EOIR"), and, as such, removal proceedings were not initiated at that time, Alonzo Decl. ¶ 8.

On July 18, 2022, ICE served J.H.F. with an Interim Notice Authorizing Parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which permitted J.H.F.'s temporary release on humanitarian parole for one year, subject to certain conditions of release. *See* Interim Notice Authorizing Parole, ECF No. 10-4. As a condition of his parole, J.H.F. was instructed to report to ICE on August 18, 2022. He reported to 26 Federal Plaza on August 26, 2022. Alonzo Decl. ¶¶ 9–10. In July 2023, J.H.F.'s parole expired and was not renewed. *See* Gov't Mem. at 5, ECF No. 8.

On July 3, 2025, J.H.F. was charged with two New York state misdemeanors: Criminal Obstruction of Breathing or Blood Circulation-Block, in violation of New York Penal Law ("NYPL") § 121.11(b), and Endangering the Welfare of a Child, in violation of NYPL § 260.10(1). Alonzo Decl. ¶ 11; Record of Arrests and Prosecutions ("RAP") Sheet at 4, ECF No. 10-5. He pleaded guilty to the § 121.11 charge, and on February 3, 2026, the White Plains City Court sentenced him to a conditional discharge and imposed an order of protection. *See* Alonzo Decl. ¶¶ 11–12; Pet. ¶ 26; RAP Sheet at 4. On August 30, 2025, J.H.F. was charged with Criminal Mischief, in violation of NYPL § 145.10, a felony, and Criminal Mischief in the Fourth Degree, in violation of NYPL § 145, a misdemeanor. RAP Sheet at 3; Alonzo Decl. ¶ 13. The felony count was dismissed on March 17, 2026, and the misdemeanor count remains pending. RAP Sheet at 3; Alonzo Decl. ¶ 13; Pet. ¶ 5. Prior to his arrest by ICE, J.H.F. was "released to contest his criminal charges on his own recognizance," "had been at liberty in the community

without issue for over [seven] months," and now, is "unable to resolve" his pending misdemeanor charge "due to his detention."  Pet. ¶¶ 5, 26.

The government claims that "ICE issued a Form I-200 Warrant for arrest to seek [J.H.F.]'s arrest and detention" as a result of his February 2026 conviction.  Alonzo Decl. ¶ 12.

Before sunrise on April 8, ICE "conduct[ed] surveillance" outside of J.H.F.'s apartment in White Plains, New York, and "approached an individual who matched the physical description of " J.H.F.  *Id.* ¶ 14; Alonzo Decl. ¶ 15; *see also* Form I-213 at 3 (noting that J.H.F.'s arrest occurred on April 8 at "approximately 0515 hours"); Pet. ¶ 23 (claiming that the arrest occurred in the "early morning" of April 8).  As J.H.F. was on his way to the train to commute to work, "unmarked ICE vehicles" "blockaded" his path, an officer spoke to him from a vehicle and asked "who he was and whether he[ had] seen the person they were looking for" by holding "up a photo of someone on a phone before quickly putting it down."  Pet. ¶ 23.  J.H.F. claims he did not have enough time to view the person in the photo.  *Id.*  J.H.F. told the officer he did not understand the question, and the officer, along with "[s]everal other officers[,] . . . surrounded [J.H.F.], rending him unable to leave."  *Id.*  One officer "grabbed" J.H.F. "by the wrists violently and pulled his arms behind his back, placing handcuffs on him."  *Id.*  J.H.F. states that after he was handcuffed, the officers identified themselves as ICE officers but "never told [him] why he was being arrested."  *Id.*  While he was in handcuffs, officers searched his person, removing his "wallet from his back pocket" and confirming that the New York learner's permit inside belonged to him; "removed his cellphone"; and "went through his backpack."  *Id.* ¶ 24.[3]

---

[3] Although the government claims that ICE officers were "wearing high-visibility attire," Record of Deportable/Inadmissible Alien ("Form I-213") at 3, ECF No. 10-6, the government does not contest J.H.F.'s account of events, including that the ICE vehicles were unmarked, that ICE officers did not show J.H.F. the photo on the phone long enough for him to register the person in the photo, that J.H.F. told ICE officers he did not understand their questions, that ICE officers did not identify themselves to J.H.F until after he was arrested, and that ICE officers searched his person, removing his wallet, learner's permit and cellphone, and his backpack while he was in

J.H.F. was then transported to a police station in White Plains, and while in transit, he "asked the [officer] why he[ had] been arrested and received no answer." *Id.* ¶ 25.  He spent approximately 10 minutes at the station, where he was questioned by officers.  *Id.*  J.H.F. was then transported to Newburgh Holding in Newburgh, New York for processing, during which time ICE "did not provide him [with] any information regarding why he was detained," "urged [him] to sign a voluntary departure order," and "served him with" an NTA (the "April 2026 NTA").  *Id.* ¶ 27; Alonzo Decl. ¶ 16; Form I-213 at 3; Gov't Mem. at 2–3.  Like the June 2022 NTA, the April 2026 NTA charged J.H.F. as inadmissible pursuant to 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(6)(A)(i).  *See* April 2026 NTA at 4, ECF No. 1-1.  The April 2026 NTA directed J.H.F. to appear before an immigration judge in Manhattan on April 15, 2026.  *Id.* at 1.  The government claims that on April 8, 2026, J.H.F. "was served with [a] [Form] I-200" Warrant but does not state that the warrant was served on J.H.F. *prior* to his early morning April 8 arrest.  Nor has the government submitted a copy of the warrant.  Alonzo Decl. ¶ 15; *see also* Form I-213 at 3 (noting that J.H.F.'s arrest occurred on April 8 at "approximately 0515 hours"); Pet. ¶ 23 (claiming that the arrest occurred in the "early morning" of April 8).  On that same day, J.H.F. was transferred to OCJ, where he continues to be detained.  *Id.* ¶ 18.

From April 13 through May 4, J.H.G. appeared at immigration court hearings.  On April 27, an "[i]mmigration [j]udge sustained [J.H.F.'s] charges of removability on the [April 2026] NTA" and on May 2, J.H.F. "filed [an] application[] for relief from removal," with a merits hearing scheduled for June 1, 2026.  Alonzo Decl. ¶¶ 17–21.[4]  On May 15, J.H.F. filed the Petition.  *See generally* Pet.

---

handcuffs, *see, e.g.*, Gov't Mem. at 2 n.1.  Without deciding the merits of J.H.F.'s Fourth Amendment claim, the Court notes that this series of events raises other constitutional issues.

[4] The immigration judge denied J.H.F.'s application for relief from removal at the June 1, 2026 hearing, and he reserved appeal to the Board of Immigration Appeals, which must be filed by July 1, 2026.  *See* ECF No. 12.

**DISCUSSION**

I.      Request to Proceed Under a Pseudonym

First, the government does not oppose J.H.F.'s request to proceed under a pseudonym.

*See* ECF No. 3; *see generally* Gov't Mem.

Generally, under Federal Rule of Civil Procedure 10(a), "[t]he title of [a] complaint must name all the parties." This requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). But courts have "carved out a limited number of exceptions to the general requirement of disclosure of the names of parties," where "the plaintiff's need for anonymity" may overcome "countervailing interests in full disclosure." *Id.* at 189 (cleaned up). "[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* To do so, the Second Circuit has explained that courts may consider the following "non-exhaustive" list of factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature . . . ;

> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties . . . ;

> (3) whether identification presents other harms and the likely severity of those harms, . . . including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity . . . ;

> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, . . . particularly in light of his age . . . ;

> (5) whether the suit is challenging the actions of the government or that of private parties . . . ;

> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular

stage of the litigation, and whether any prejudice can be mitigated by the district
court . . . ;

(7) whether the plaintiff's identity has thus far been kept confidential . . . ;

(8) whether the public's interest in the litigation is furthered by requiring the
plaintiff to disclose his identity . . . ;

(9) whether, because of the purely legal nature of the issues presented or otherwise,
there is an atypically weak public interest in knowing the litigants' identities . . .;
and

(10) whether there are any alternative mechanisms for protecting the confidentiality
of the plaintiff.

*Id.* at 190 (cleaned up).  "[A] district court is not required to list each of the factors or use any

particular formulation as long as . . . the court balance[s] the interests at stake in reaching its

conclusion."  *Id.* at 191 n.4.  A plaintiff seeking to proceed under a pseudonym must also base

his allegations on more than just "mere speculation."  *Doe v. Skyline Autos., Inc.*, 375 F. Supp.

3d 401, 405 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

Here, the factors set forth above weigh in favor of granting J.H.F.'s request.  The

underlying facts of the Petition concern sensitive personal information relating to J.H.F.'s

immigration proceedings.  Because a CBP officer determined that J.H.F. had demonstrated a

credible fear of persecution or torture if deported, *see* ECF No. 3 at 4–5, public disclosure of

J.H.F.'s name and information could place him in danger if he returns to Peru.  *See id.* at 5.  The

public's interest in knowing J.H.F.'s identity is weak because the Petition concerns only issues of

law, *see supra* n.2.  Further, the government will not be prejudiced by J.H.F.'s anonymity

because his identity has already been disclosed to the government, and the Court finds no other

prejudice to the government by allowing J.H.F. to proceed under a pseudonym.  *See generally*

Gov't Mem.  Accordingly, J.H.F.'s request to proceed anonymously in this litigation is granted.

II.    Habeas Petition

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* In analyzing J.H.F.'s due process claim, the Court holds that (1) J.H.F. is not subject to detention under 8 U.S.C. § 1225(b)(2)(A) and his detention is governed by § 1226(a); and (2) because J.H.F. was paroled for urgent humanitarian reasons and public benefit in 2022, and continued to be at liberty in the community since his parole ended in 2023, and the government has not articulated that his one-year parole period was calculated based on a risk that his circumstances would change in one year, or that the urgent humanitarian reasons and public benefit for his parole no longer exist, his due process rights were violated when ICE detained him without first making an individualized determination as to his dangerousness and flight risk.

A.  Basis of Detention

The government seeks to justify J.H.F.'s detention under 8 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention of certain noncitizens. *See* Gov't Mem. at 4–5. [5]

---

[5] In its letter, the government asserts that J.H.F. is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), not § 1225(b)(2), such that J.H.F. is subject to expedited removal detention. *See* Gov't Ltr. ¶¶ a–c, ECF No. 7 ("Petitioner in this case is subject to detention under 8 U.S.C. § 1225(b)(1)(B)(ii), which distinguishes it from the cases . . . involving detention under § 1225(b)(2)(A) and § 1226(c)."). This position directly contradicts the arguments made in the government's memorandum of law, namely that J.H.F. is subject to detention under § 1225(b)(2)(A), *see* Gov't Mem. at 5. In any event, it lacks merit. Under § 1225(b)(1)(B)(ii), if the officer conducting a credible fear interview "determines at the time of the interview that a[] [noncitizen] has a credible fear of persecution, . . . the [noncitizen] shall be detained for further consideration of the application for asylum." Although after his credible fear interview J.H.F. was served with the June 2022 NTA pursuant to § 1225(b)(1), as the government concedes, it "was not filed with the . . . EOIR, therefore removal proceedings were not initiated at that time." Alonzo Decl. ¶ 8. Further, when J.H.F. was served with the 2022 June NTA, his immigration case was "removed from the process for expedited removal and placed into the usual removal process under . . . 8 U.S.C. § 1229a." *Qasemi v. Francis*, No. 25 Civ. 10029, 2025 WL 3654098, at *4 (S.D.N.Y. Dec. 17, 2025) (internal quotation marks omitted). Moreover, because J.H.F. was paroled pursuant to the Interim Notice Authorizing Parole,

1.   Section 1225(b)

As it relates to § 1225(b), the government acknowledges that in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), the Second Circuit held that "noncitizens who unlawfully entered the United States and evaded inspection, only to later be encountered by immigration officials after [their] initial entry, can only be subject to detention under 8 U.S.C. § 1226 and not under 8 U.S.C. § 1225(b)(2)(A)."  Gov't Mem. at 4; *see also Cunha*, 175 F.4th at 69 ("Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.")  The government contends that J.H.F. is detained under § 1225(b)(2)(A) and that *Cunha* does not apply because J.H.F. was apprehended at the southern border in 2022 at the time of entry and processed for expedited removal under § 1225(b)(1) but then paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), without a renewal of his parole after its expiry in July 2023.  *See* Gov't Mem. at 5.

The Court rejects this argument and finds that "[s]ection 1226(a) plainly applies to noncitizens, like [J.H.F.], who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Cunha*, 175 F.4th at 73.  First, it is undisputed that J.H.F. has continually lived in the country since May 2022 when he was determined to be inadmissible.  *See* Pet. ¶ 22; Alonzo Decl. ¶ 3; Form I-860 at 1.  Second, as the government acknowledges, "several courts in this Circuit have considered and rejected similar

---

as other courts in this Circuit have held, § 1225(b)(1) is "most sensibly read to exclude from the expedited removal provisions . . . those noncitizens who were . . . at any time paroled into the United States." *Id.* at *9; *see also Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 303 (E.D.N.Y. 2025) ("[T]he grant of humanitarian parole to [the petitioner] moved her out of expedited removal proceedings and related mandatory detention."), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Covelli-Chaparro v. Bondi*, 816 F. Supp. 3d 332, 341 (E.D.N.Y. 2026) (holding that, § 1225(b)(1) "is entirely inapplicable" to a case involving a noncitizen who was paroled into the United States and has been living in the country since 2022, and who is not, therefore, an "arriving alien" under that provision).  J.H.F. is not, therefore, subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1).

arguments since the . . . *Cunha*" decision.  Gov't Mem. at 5.  The Court agrees with these decisions, and others determining that § 1225(b) does not apply to certain noncitizens whose parole has expired.

Section 1182(d)(5)(A) confers upon the Attorney General the discretion to parole certain noncitizens who apply for admission as follows:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Although § 1182(d)(5)(A) requires a noncitizen to be "returned to the custody from which he was paroled" after the expiry of his parole, the Supreme Court has confirmed that "'nothing in Section 1182(d)(5)(A)'s text . . . affirmatively authorizes detention,' so the statute cannot be read to independently authorize a parolee's confinement following the expiration of h[is] parole." *Salgado v. Francis*, No. 25 Civ. 6524, 2026 WL 915304, at *5 (S.D.N.Y. Apr. 3, 2026) (alterations adopted) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)).  Section 1182(d)(5)(A) further provides that after parole expires, the noncitizen's case "shall continue to be dealt with in the same manner as that of any other applicant for admission."  "Any other applicant for admission who had resided in the United States for more than four years . . . , like [J.H.F.], would be subject to detainment under the provisions of Section 1226."  *Salgado*, 2026 WL 915304, at *5;[6] *see Hernandez Villasmil v. Blanche*, No. 26 Civ. 713, 2026 WL 1235068,

---

[6] Because the government has not submitted a copy of the Form I-200 Warrant, purportedly issued in connection with J.H.F.'s April 8 arrest, and does not identify the statute cited therein, the Court cannot discern the statutory basis for J.H.F.'s arrest.  Moreover, the government does not argue that the Form I-200 Warrant was issued pursuant

at *6 (N.D.N.Y. May 5, 2026) (applying "the Second Circuit[']s guidance in *Cunha*" and finding that the petitioner, whose humanitarian parole had expired, "is not an arriving alien" and therefore "does not fall under the mandatory detention provision of § 1225" (internal quotation marks omitted)); *Covelli-Chaparro*, 816 F. Supp. at 341 ("[C]BP paroled [the petitioner] into the interior of the United States on or around May 1, 2022, and he has continuously resided in the country since then. . . . Therefore, he is not 'seeking admission' as required for mandatory detention under [§] 1225(b)(2)." (internal quotation marks omitted)); *Qasemi*, 2025 WL 3654098, at *11–12 ("[T]he termination by expiration of [the petitioner's] parole returned him to the 'custody' of DHS. . . . [A]bsent ongoing parole status, Section 1182 mandates that [the petitioner] be treated just as the INA would treat any noncitizen previously granted parole and living in the United States. . . . Therefore, any determination as to [the petitioner's] detention must be conducted under the discretionary framework of Section 1226(a)." (citations omitted)); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 308–09 (E.D.N.Y. 2025) (holding that § 1225(b)(2)(A) was inapplicable to a petitioner, who was paroled pursuant to § 1182(d)(5)(A), because she was not seeking admission but rather seeking "to obtain a lawful means to remain [in the United States] where she has been continuously residing for more than four years." (citations omitted)), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026).

Section 1225(b)(2) "applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." *Cunha*, 175 F.4th at 74–75; *see id.* ("Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical

---

to § 1225(b)(2)(A). *See generally* Gov't Ltr.; Gov't Mem.; Alonzo Decl. That J.H.F. entered the country in May 2022, was paroled pursuant to § 1182(d)(5)(A), and remained in the country after his parole ended in 2023, is sufficient to establish that his detention should be analyzed under § 1226(a) and not § 1225(b)(2)(A).

border into the United States but are apprehended at the 'threshold of initial entry.'" (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[P]arole of such [noncitizen] shall not be regarded as an admission of the [noncitizen].")  Although J.H.F. is an applicant for admission under the statutory definition of § 1226(b)(2) because he is "present in the country and has never been admitted," he is not requesting lawful entry into the United Sates as he already entered the country four years ago; instead, he is now seeking relief from removal.  *Cunha*, 175 F.4th at 75.  Therefore, J.H.F. is not subject to mandatory detention under § 1225(b)(2)(A).

        2.  Section 1226

As stated above, J.H.F. is a noncitizen who has been living in the country since 2022 during the pendency of his immigration proceedings, and his detention is, therefore, governed by the government's discretionary authority under § 1226(a).  As the Supreme Court has unambiguously held, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation omitted); *Velasco Lopez*, 978 F.3d at 850.

To assess the adequacy of due process in the context of civil immigration enforcement, the Court applies the *Mathews v. Eldridge* balancing test.  *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025).  This test requires the Court to determine: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the [g]overnment's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.*  The Court assesses these factors mindful of the fact that J.H.F. is detained pursuant to § 1226(a), not

12

§ 1225(b)(2)(A).  The government "must have some justification before it deprives a person protected by the Due Process Clause of h[is] liberty."  *Qasemi*, 2025 WL 3654098, at *12.

Here, in 2022, the government exercised its discretion, on a "case-by-case basis," to release J.H.F. into the community on parole for "urgent humanitarian reasons or significant public benefit" because a CBP officer determined that J.H.F. had demonstrated a credible fear of persecution or torture if deported.  8 U.S.C. § 1182(d)(5)(A).  As in *Qasemi*, "[t]here is no evidence that the CBP officer based the one-year parole period on any determination that the risk-reward calculus would change after one year."  2025 WL 3654098, at *13.  Nor has the government articulated that the humanitarian reasons and public benefit that supported J.H.F.'s release no longer exist.  Instead, the government argues that it issued a Form I-200 Warrant for J.H.F.'s arrest "[d]ue to" his February 3, 2026 conviction.  Alonzo Decl. ¶ 12; Gov't Mem. at 2. The government does not contend, however, that it conducted an individualized determination as to J.H.F.'s danger to the community or flight risk as a result of this conviction.  *See e.g.*, Gov't Mem. at 5 ("Petitioner's detention is governed by § 1225(b)(2)(A).").  Nor does it present any evidence that it exercised discretion when it decided to redetain J.H.F., who has been at liberty in the community since 2022, has appeared at immigration hearings, and is the father of a 3-year-old son and the caretaker of his elderly mother, who both live in New York.  Pet. ¶¶ 5, 22; Alonzo Decl. ¶¶ 9–10.

For the reasons explained in *Salgado*, 2026 WL 915304, at *7, *Qasemi*, 2025 WL 3654098, at *12–14, *Covelli-Chaparro*, 816 F. Supp. 3d at 343–45, among other cases, the Court concludes that an individualized determination and exercise of discretion is required when detaining someone pending removal proceedings under § 1226(a), and, therefore, J.H.F.'s due process rights were violated when he was "re-detained by immigration authorities with no deliberative process prior

13

to, or contemporaneous with the detention." *Lopez Benitez*, 795 F. Supp. 3d at 498 (quoting *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025)).

"[B]ecause the Government (incorrectly) contends that [J.H.F.]'s detention is mandatory, it has made little effort to show that it exercised any discretion when deciding whether [J.H.F.] should be detained." *Salgado*, 2026 WL 915304, at *7. The government does not argue that ICE made an individualized custody determination prior to or contemporaneously with J.H.F.'s arrest. *See generally* Gov't Mem.; Gov't Ltr. Instead, the government contends that it need not make *any* custody determination upon arrest because J.H.F.'s detention is mandatory. The Court rejects this argument. Moreover, the government's mere claim that it issued the Form I-200 Warrant—a copy of which was not filed with the Court—is not enough. Because J.H.F. was detained without the government "first conducting an individualized assessment as to his dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion," his detention violates his Fifth Amendment due process right, and his release is required. *Lopez Benitez*, 795 F. Supp. 3d at 496.

## CONCLUSION

For the reasons stated above, the Petition is GRANTED. The government is ordered to immediately release J.H.F. from custody.

The government must brief its authority, if any consistent with this Order, to (1) redetain J.H.F. without a valid exercise of discretion; (2) deny bond to J.H.F. in any subsequent proceeding on the ground that he must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A), absent a change in relevant circumstances; or (3) invoke the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) if J.H.F. is granted bond.

If, instead, the government confirms that it will take none of those steps with respect to J.H.F. without prior notice of at least one week provided to him and the Court, it need not file such briefing. *See Quispe-Sulcaray v. Noem*, No. 25 Civ. 9908, 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025).

By **June 15, 2026,** at **12:00 p.m.**, the government shall file a letter on the docket certifying compliance with this order.

SO ORDERED.

Dated: June 14, 2026
       New York, New York

_____
ANALISA TORRES
United States District Judge